IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


CECILLE MARTINEZ-WECHSLER,

    Plaintiff,

v.                                                   CIV 12-0738 KBM/ACT

SAFECO INSURANCE COMPANY OF AMERICA,
a Washington corporation, and,
ROBERT C. CEPELAK, individually,

    Defendants.


## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendants' Motion to Enforce Settlement Agreement *(Doc. 31)*, filed September 25, 2012 and fully briefed on October 17, 2012 *(Docs. 31, 37, 40, 41)*. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 5, 7, 8.* Having reviewed the parties' submissions and the relevant law, I find Defendants' Motion should be granted.

**I.    BACKGROUND**

This litigation arises out of an April 27, 2009 car accident in which Plaintiff was rear-ended by Defendant Robert C. Cepelak, who was trying to locate a business and was not paying careful attention to the vehicles ahead of him. *(See Doc. 13 at 2.)* There is no dispute that the car accident was entirely the fault of Mr. Cepelak. *See id*

The parties negotiated settlement of Plaintiff's claims for $45,100.00. *See Doc. 13* at 2. Plaintiff objected to certain terms in the release prepared by Defendants' counsel, and, on April

13, 2012, Plaintiff filed a lawsuit in New Mexico's First Judicial District Court. *See Doc. 13* at 2-3; *Doc. 3* at 3. In her Complaint, Plaintiff sought rescission of the settlement agreement on the grounds that Defendant Safeco "willfully or negligently substantially failed to perform the conditions of the contract without adding new terms to the contract in an effort to force Mrs. Martinez-Wechsler into agreeing to new additional terms." *Doc. 3* at 12. Plaintiff also requested damages for Mr. Cepelak's negligence (Count II) and negligence per se (Count I), unfair claims practices and unfair trade practices on the part of Defendant Safeco (Count III), breach of the covenant of good faith and fair dealing by both Defendants (Count V), and breach of contract by both Defendants (Count VI). *Doc. 3* at 6-11.

On April 26, 2012, Defendants filed a Motion to Enforce Settlement Agreement in New Mexico's First Judicial District Court. *See Doc. 3* at 19-49. On September 13, 2012, I found that the case had been properly removed to federal court and denied Plaintiff's motion to remand. *Doc. 27.* The parties have again briefed the issues raised in Defendants' motion to enforce the settlement and incorporated the arguments set forth in the original briefing in state court as well. Defendants request as relief "an order enforcing the parties' settlement agreement and dismissing this matter with prejudice upon the execution of a release consistent with the parties' settlement agreement." *See Doc. 31* at 6; *Doc. 40* at 9.

**II.    LEGAL STANDARD**

On a motion to enforce a settlement agreement, the Tenth Circuit, like many of the other federal circuit courts of appeal, has typically required an evidentiary hearing only "where material facts concerning the existence or terms of an agreement to settle are in dispute." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) (collecting cases from the Third, Fourth, Fifth, Sixth, Eighth, Ninth, and D.C. Circuit Courts of Appeal). *See also Chicano Police*

*Officer's Ass'n v. Stover*, 624 F.2d 127, 131-32 (10th Cir. 1980) (remanding for evidentiary hearing to determine material facts in dispute concerning settlement terms).  Here, the facts are undisputed, and the application of the law to those facts is at issue.  *See e.g.*, *Gomez v. Jones-Wilson*, No.31,085 (N.M. Ct. App. October 24, 2012) (reversing enforcement of pre-litigation oral settlement agreement where there was no evidence of attorney's authority to enter into settlement on his client's behalf).

**III.   ANALYSIS**

    **A.   Plaintiff and Defendants Formed a Valid and Binding Contract Settling Plaintiff's Claims Against Defendants.**

"Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law." *Sims-Madison v. Inland Paperboard and Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004).  *See also Onischuk v. Johnson Controls Inc.*, 182 Fed. Appx. 532, 533 (10th Cir. 2006) (citing same).  New Mexico "has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals." *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 775 P.2d 233, 237 (N.M. 1989).  The elements required to establish a binding contract under New Mexico law are: (1) offer, (2) acceptance, (3) consideration, and (4) mutual assent.  *Garcia v. Middle Rio Grande Conservancy Dist.*, 918 P.2d 7, 10 (N.M. 1996).  Regarding settlement agreements in particular, the New Mexico Supreme Court has long recognized that "a party can be considered bound by a settlement even if certain details are not worked out, if such details are not essential to the proposal or cause a change in the terms or purpose to be accomplished by the settlement." *Jones v. United Minerals Corp.*, 604 P.2d 1240, 1242 (N.M. 1979).

Plaintiff argues that the parties' settlement is not enforceable for two reasons. First, Defendants' proposed release sought to add new material terms to their oral agreement, such that no meeting of the minds ever occurred. *See Doc. 37* at 2. Second, Defendants breached the contract shortly after it was entered such that Plaintiff was entitled to rescind. *See Doc. 37* at 9. Plaintiff contends that Defendants' breach lies first in failing to pay the agreed-upon $45,100 in a timely manner and, second, in proposing the above-referenced new terms. *See id.* at 10.

### 1. *The parties reached a binding "meeting of the minds" as to all material terms of the Settlement Agreement.*

The phrase "meeting of the minds" should not be applied too liberally or too literally. Initially, mutual assent is only required as to the material terms of the contract. *See Pope v. Gap, Inc.*, 961 P.2d 1283, 1286-87 (N.M. Ct. App. 1998). Non-material terms may be missing or left to be agreed upon without affecting the enforceability of the contract. *See Jones*, 604 P.2d at 1242. Also, "[m]utual assent is based on objective evidence, not the private, undisclosed thoughts of the parties." *Pope*, 961 P.2d at 1287. "Where the parties attach materially different meanings to the words in the offer, mutual assent is absent if neither party knows or has reason to know the meaning attached by the other, or each party knows or has or has reason to know the meaning attached by the other." *Id.* (citing Restatement (Second) of Contracts § 20(1) (1981)).

The New Mexico Court of Appeals recognized in 1998 that "New Mexico case law provides very little guidance on the subject" of materiality in the contractual context. *Famiglietta v. Ivie-Miller Enter., Inc.*, 966 P.2d 777, 782 (N.M.Ct. App. 1998). Materiality is a question of fact. *See id. See also Wheeler Peak, LLC v. L.C.I.2, Inc.*, Case No. CIV 07-1117 JB/WDS, 2009 WL 1329115 at *8 (D.N.M. Apr. 13, 2009) ("Materiality of contract terms and the determination of whether a contract existed, however, are questions of fact."). A "material"

breach of contract under New Mexico law is a "failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Id.* (quoting *Horton v. Horton*, 487 S.E.2d 200, (Va. 1997)). Something material to a contract "touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract" and is "an essential and inducing feature of the contract." *See id.* (quoting, respectively, *Ervin Constr. Co. v. Van Orden*, 874 P.2d 506, (Idaho 1993) and *Lease-It, Inc. v. Massachusetts Port Auth.*, 600 N.E.2d 599, 602 (Mass. App. Ct. 1992)). Materiality of a contract term also "depends upon what the parties thought in contracting, and not what has happened since the parties entered into the Contract." *Wheeler Peak*, 2009 WL 1329115 at *8.

Again, there is no genuine dispute as to the relevant and material facts; in fact, the parties' settlement negotiations occurred largely in writing. On March 8, 2012, the parties agreed to settle the case for $45,100. *See Doc. 35* at 14. On the same day, Defendants submitted a written agreement for Plaintiff's signature. *See id.* at 15. Plaintiff contends that the Agreement included brand-new, never discussed terms concerning Medicare and another insurer, Progressive, which had paid a portion of Plaintiff's medical bills related to the underlying car accident. *See Doc. 37* at 1-2.

In fact, the record reflects that on August 19, 2010 – over eighteen months prior to the parties' agreement on March 8, 2012 – Defendant Safeco requested from Plaintiff "identifying information that will allow us to confirm whether your client is a Medicare beneficiary" in order to comply with mandatory reporting requirements for insurers. *Doc. 40-1* at 9; *Doc. 40-6* at 1. Defendant Safeco informed Plaintiff, through her attorney, that the information was needed "even if your client is not currently a Medicare beneficiary, so that we can demonstrate that we are screening each file to determine whether the report is needed or not." *Id.* Defendants further

informed Plaintiff's counsel, in boldface type, that the "[f]ailure to provide this information may slow resolution of this matter." *Id.*  Plaintiff's counsel responded to this request by telephone, indicating that he "d[id] not like the medicare release & he may not have his client sign it." *See Doc. 40-7* at 1.  After some discussion, Plaintiff's attorney indicated he would contact his client and discuss the matter. *See id.*

Defendants never received Plaintiff's Medicare information. *See Doc. 40* at 3.  Lacking any way to confirm Plaintiff's Medicare status, Defendants contend they are obligated to include some provision for payment to Medicare. *See id.*  Indeed, federal law requires liability insurers like Defendant Safeco to first "determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under [Medicare]" and, second, when the claimant is a Medicare beneficiary, submit required information to the federal government. *See* 42 U.S.C. § 1395y(b)(8)(A).  Defendant Safeco is subject to a civil penalty of $1,000 for each day of noncompliance with respect to each claimant. *See* 42 U.S.C. § 1395y(b)(8)(E).

There does not appear to be any discussion in the record prior to March 8, 2012 concerning Progressive; however, Plaintiff does not dispute that Progressive paid a portion of her medical bills.  Thus, neither Plaintiff nor her counsel, who is experienced in the settlement of personal injury cases, can claim surprise at Defendants' inclusion of settlement terms concerning Progressive.  Moreover, the Court notes communications between counsel where Plaintiff's attorney agreed that Plaintiff would pay Progressive out of settlement proceeds.  During pre-litigation negotiations dated March 20, 2012, Plaintiff's counsel stated she had "finished negotiating with Progressive and [] will handle getting them paid" and had specifically "agree[d] to pay them from the settlement proceeds." *See Doc. 40-3.*  Subsequently, however, Progressive

informed Defendants of April 13, 2012 that "there was no agreement on the Progressive subro with attorney, in fact they have not acknowledged the subro." *See Doc. 40-5*.

  Assuming, without deciding, that the treatment of third-party payors such as Medicare and Progressive is a material term of the parties' settlement, I find that Plaintiff knew or had reason to know that Defendants intended to include provisions for Medicare and Progressive in the parties' settlement. *See* Restatement (Second) of Contracts § 20(1)(1981) (the manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties where one party has reason to know of a different meaning attached by the other). Not only did Defendants' attorneys specifically address both Medicare and Progressive as potential payees with counsel for Plaintiff, but Plaintiff's counsel also had independent awareness of both as well as experience enough in these matters to expect that such third parties would be addressed by the terms of the Settlement Agreement. Because Plaintiff had reason to know that Defendants anticipated that the settlement would include some provision for payment to Medicare and Progressive, whereas Defendants had no reason to expect that such a provision would be a deal-breaker, Defendants' understanding of the parties' settlement governs. *See* Restatement (Second) of Contracts § 20(1)(1981).

  This case is distinguishable from *Trujillo v. Glen Falls Ins. Co.*, upon which Plaintiff relies. Unlike Plaintiff in the present case, neither party in *Trujillo* had knew or had reason to know of the other's different interpretation of their agreement. *See* 540 P.2d 209, 211 (N.M. 1975) (noting that "neither party to the oral contract expressed in an objective fashion what they intended the term $7,500 to mean when the alleged settlement was thought to have been arrived at"). Here, Plaintiff had reason to know that Defendants expected proper payment of both Medicare and Progressive as part of the settlement. Meanwhile, Plaintiff never expressed an

unwillingness to pay either Medicare or Progressive; thus, Defendants had no basis upon which to know of any lack of mutual assent.

The other cases cited by Plaintiff are similarly distinguishable.  In *Clark v. Mitchell*, the plaintiff and defendant negotiated settlement, but the defendant subsequently forwarded a settlement agreement with a number of terms, including a confidentiality agreement with a liquidated damages clause equal to the amount of settlement, most of which had been previously rejected by counsel for plaintiff.  See  *Clark*, 937 F. Supp.110, 113-114 (D.N.H. 1996).  Such is not the case here, where the settlement agreement contained terms that are common to settlement agreements in general and about which Plaintiff was specifically aware.

Plaintiff's description of the facts in *In re Pago Pago Aircrash of Jan. 30, 1974* is erroneous.  Plaintiff asserts that the parties in *Pago Pago* agreed upon an amount to settle their claims, but then the defendant prepared a release, "including a provision that settlement was contingent upon releasing other entities."  *See Doc. 37* at 8.  Actually, the defendant's *offer* to settle was expressly contingent upon the release of all defendants.  *See* 637 F.2d 704, 706 (9th Cir. 1981).  The Ninth Circuit declined to enforce the alleged settlement not because the defendant put new terms in settlement document, as Plaintiff contends, but rather because the plaintiff's purported acceptance was not absolute and unqualified.  *See id.*  While the plaintiff in *Pago Pago* agreed upon the settlement amount, he would only agree to the global release if the defendants agreed to forego costs imposed by the Court.  *See id.* at n.2.  The Ninth Circuit concluded that instead of an acceptance, the plaintiff's response to the defendant's settlement offer was counteroffer, which was never accepted by the defendants.  *See id.* at 706-707.  The present case does not involve any question about the validity of the offer and acceptance.

### *2.    Plaintiff may not rescind the Settlement Agreement with Defendants.*

Plaintiff contends that she should be entitled to rescind the parties' Settlement Agreement because "Defendants failed to perform their obligation under the contract in a timely manner by choosing not to provide the agreed-upon funds." Doc. 37 at 9-10. Thus, Plaintiff would have Defendants turn over the agreed settlement amount in the absence of a signed agreement and release. *C.f., Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034, 1037 (9th Cir. 2011) ("The Winklevosses argue that if [other documents required to finalize the parties' settlement] really are 'required' and 'typical,' then they must be material, and their absence from the Settlement Agreement renders it unenforceable."). Just as California law failed to support the Winklevosses' position in the *Facebook* litigation, New Mexico law does not support Plaintiff's position here. *See Jones*, 604 P.2d at 1242 ("[A] party can be considered bound by a settlement even if certain details are not worked out, if such details are not essential to the proposal or cause a change in the terms or purpose to be accomplished by the settlement.") Moreover, the Court finds no evidence that the parties' settlement included a time line for payment of proceeds. Plaintiff is not entitled to rescind the Settlement Agreement in this case.

Wherefore**,**

**IT IS HEREBY ORDERED** that Defendants' Motion to Enforce Settlement *(Doc. 31)* is granted. Within one week of the entry of this Order, the parties are directed to execute a final Settlement Agreement, providing for appropriate reimbursement of Progressive and addressing Plaintiff's Medicare status as required by the applicable regulations. Upon the parties' notice that the agreement has been finally executed, I will issue a final judgment dismissing this action with prejudice.

**IT IS FURTHER ORDERED** that as a result of the Court's decision herein, Defendant Safeco's Motion to Bifurcate and Stay Discovery *(Doc. 39)* and Plaintiff's Motion to Amend Complaint for Clarification *(Doc. 42)* are found moot.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent